# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

DEAN R. ANDERSON and DEBBI J.
ANDERSON,

        Plaintiffs,

v.

1399557 ONTARIO LTD.,[1] a/k/a Fibertec
Windows & Doors, Mfg., a/k/a Fibertec,
Inc.; ABOVE AND BEYOND
CONSTRUCTION INC.; ARLO COOK;
and E SHIP ONE INC.,

        Defendants.

Case No. 18-CV-1672 (PJS/LIB)

ORDER

---

    Jordan W. Anderson, PARKER & WENNER, P.A., for plaintiffs.

    Bryan R. Battina and Nicholas N. Sperling, TREPANIER MACGILLIS
    BATTINA, P.A., for defendant 1399557 Ontario LTD.

    Kurt M. Mitchell and Kayla J. Giese, HELLMUTH & JOHNSON, PLLC, for
    defendants Above and Beyond Construction Inc. and Arlo Cook.

    Plaintiffs Dean and Debbi Anderson bought nearly $100,000 worth of windows

from defendant Arlo Cook and his company, defendant Above and Beyond

Construction ("Above & Beyond"). The windows were manufactured by defendant

---

[1] The name of this defendant is misspelled as "1399557 Onterio Ltd." in the
amended complaint and other papers filed by the parties (including the papers filed by
1399557 Ontario Ltd.'s own attorney). The Court will use the correct spelling in this
order and direct the Clerk to correct the case caption.

1399557 Ontario Ltd. ("Fibertec") and were advertised to include a "Lifetime

Warranty."  Over three-and-a-half years after the windows were installed, the

Andersons noticed a problem with the windows' transparency.  The problem persisted,

and eventually the Andersons complained to Fibertec.  Relying on the terms of its

"Limited Lifetime Warranty," Fibertec offered to replace the glass in the windows, but

refused to pay shipping or installation costs.  This did not satisfy the Andersons, so they

filed this lawsuit.  Fibertec, Above & Beyond, and Cook now move for judgment on the

pleadings as to all claims brought against them.[2]

Unfortunately, the Andersons have taken a kitchen-sink approach in pursuing

this case.  *See Gurman v. Metro Hous. & Redevelopment Auth.*, 842 F. Supp. 2d 1151, 1153

(D. Minn. 2011) ("This Court has repeatedly criticized the filing of 'kitchen-sink' or

'shotgun' complaints—complaints in which a plaintiff brings every conceivable claim

against every conceivable defendant.").  In their amended complaint, the Andersons

asserted multiple breach-of-warranty and fraud claims—some borderline

frivolous—against each of the defendants.  They attempted to add more theories in their

brief.  And they attempted to add yet more theories at oral argument.  What the

Andersons have failed to do is to plead a single viable claim against any of the

_____

[2]There is also a claim pending against defendant E Ship One, which has yet to
make an appearance in this case.  *See* ECF No. 22 at ¶¶ 153-59.  For the sake of
convenience, the Court will refer to the three moving defendants collectively as the
"defendants."

defendants.  Thus, the Court dismisses all of the Andersons' claims, most with prejudice, but some without.

## I. BACKGROUND

The Andersons' amended complaint alleges the following:

In the summer of 2010, the Andersons began designing a lake home to be built in Alexandria, Minnesota.  ECF No. 22 at ¶ 12.  The home was designed so that a "majority of the windows would provide scenic views, including a two-story vista at the center of the house with a grand bank of windows facing southeast."  *Id.* at ¶ 14.  The Andersons wanted all of the windows to have "good insulation" and the windows on the south side of the home to have "the ability to let in solar heat in the winter."  *Id.* at ¶ 15.  While the Andersons were designing their new home, they attended the Minneapolis Home and Garden Show.  *Id.* at ¶ 18.  At the Home and Garden Show, the Andersons stopped at a booth belonging to Above & Beyond and talked to Arlo Cook.  *See id.* at ¶¶ 9, 19.

Cook informed the Andersons that Above & Beyond was "the exclusive distributor" in the area for windows manufactured by Fibertec.  ECF No. 22 at ¶ 20.  He gave the Andersons "glowing reports" about "the integrity of Fibertec" and "the quality of their product," and "assured" the Andersons "that Fibertec had been a fantastic company to work with."  *Id.* at ¶ 21.  Cook also told the Andersons that:

- Fibertec windows have "high value and quality . . . fiberglass frames," and an "amazing seal and low air infiltration qualities." *Id.* at ¶ 22.

- "[T]est results" showed that Fibertec windows "have excellent insulation 'U-value'" and "have the ability to take in radiant solar heat in the winter while blocking the UV rays which cause[] fading of fabrics, flooring, and rugs inside the Home." *Id.* at ¶ 24.

- "[T]he 'e coatings' that Fibertec ha[s] on their window[s]" will "prolong the life and quality of the windows and give great energy effeciency [sic]." *Id.* at ¶ 26.

- Fibertec windows' "triple pane glass" design has "great benefits," and Fibertec windows are "the type of windows [that the Andersons] need[] to meet their needs." *Id.* at ¶ 25.

- Fibertec "had an excellent reputation when it came to replacement of broken or failed sealed glass units even replacing a unit or two at no charge if they were accidently [sic] broken during installation." *Id.* at ¶ 27.

Cook also provided the Andersons with the following one-page promotional flyer:



ECF No. 22 at ¶ 37; ECF No. 22-1.

In the winter of 2011, the Andersons placed an order with Above & Beyond for $97,738.43 worth of Fibertec windows. ECF No. 22 at ¶¶ 29, 48, 115. The Andersons hand delivered a check to Cook, but Cook did not provide them with a written contract or a copy of Fibertec's Limited Lifetime Warranty. *Id.* at ¶¶ 31-32. Instead, the Andersons were given a copy of the order form that Above & Beyond sent to Fibertec. *Id.* at ¶ 33. That form simply listed the windows' specifications, such as "the size, e-

glass treatments, [and] design and product information." *Id.* The Andersons' windows were delivered and installed in April 2011. *Id.* at ¶ 39.

In November 2014—more than three-and-a-half years later—the Andersons "first noticed . . . that the windows appeared to be either cloudy or dirty." ECF No. 22 at ¶ 40. The Andersons "had the windows professionally cleaned, which improved the [problem]." *Id.* at ¶ 41. Still, over the next couple of years, the Andersons continued to notice problems with the windows' transparency, and twice more had them professionally cleaned. *Id.* at ¶¶ 42-45. During the final cleaning (in July 2016), "the professional window washer indicated that he was positive that the window units were failing," pointing out "that the clouding and condensation was in fact between the panes of glass." *Id.* at ¶ 45.

This prompted Dean Anderson to contact Fibertec. ECF No. 22 at ¶¶ 45-46. Anderson initially spoke to Marcia Brooks, who was apparently a customer-service representative. *Id.* at ¶ 46. Brooks advised Anderson that Fibertec had become aware of a problem with the seals of windows produced during the "time-frame" in which the Andersons purchased their windows. *Id.* at ¶ 48. She explained that Fibertec would fabricate replacement windows for the Andersons, but she made no representations regarding shipping or installation costs. *Id.* at ¶ 51. Brooks also explained that because the replacement windows needed to be manufactured—and because the replacement

windows could not be installed in temperatures below 50 degrees (and autumn was fast

approaching)—it was unlikely that the replacement windows could be installed before

spring. *Id.* at ¶ 52. The Andersons agreed to wait until spring. *Id.* at ¶ 53.

Sometime in the spring or summer of 2017, Brooks arranged a call between

Anderson and Zion Knafo (the General Manager of Fibertec). *See* ECF No. 22 at ¶ 60.

Knafo informed Anderson that Fibertec would provide replacement glass for all of the

Andersons' windows under Fibertec's Limited Lifetime Warranty. *Id.* at ¶ 62. But, said

Knafo, under the terms of that warranty, shipping and installation costs were no longer

included, as those expenses were covered for only two years after delivery, and as the

Andersons' windows had been delivered six years earlier. *Id.* at ¶¶ 62-63; ECF No. 22-2.

The Andersons had never been given a copy of the Limited Lifetime Warranty and saw

it for the first time on July 11, 2017, when Cook emailed a copy. ECF No. 22 at ¶ 68.

Later that July, the Andersons made arrangements with Fibertec to have their

glass replaced under the Limited Lifetime Warranty. ECF No. 22 at ¶ 70. Fibertec told

the Andersons that it would take four to six weeks to deliver the new glass—meaning

that delivery would likely occur in August 2017. *Id.* at ¶ 72. August came and went, as

did September, and finally in October Fibertec notified the Andersons that the

replacement glass was ready to ship. *Id.* at ¶ 77. But because the glass could not be

installed in temperatures below 50 degrees, the Andersons informed Fibertec that it should not deliver the glass until spring.  *Id.* at ¶¶ 76, 78-79.

On May 24, 2018, the replacement glass was delivered to the Andersons' home by defendant E Ship One.  ECF No. 22 at ¶ 103.  When the glass arrived, though, "over 15% of the . . . units were visibly damaged."  *Id.* at ¶ 106.  The Andersons notified Fibertec that, because some of the units were defective, they were rejecting all of the units.  *Id.* at ¶ 112.  About three weeks later, the Andersons filed this action.  *See* ECF No. 1.  The Andersons bring various breach-of-warranty and fraud claims against various defendants.  *See* ECF No. 22.  Defendants Above & Beyond, Cook, and Fibertec move for judgment on the pleadings on all claims.  ECF No. 39; ECF No. 44.

## II.  ANALYSIS

### A.  *Standard of Review*

In reviewing a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), a court applies the same standard used in reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  *Ashley Cty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  Under this standard, the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiffs' favor.  *Id.*  Although the factual allegations in the complaint need not be detailed, they must be

sufficient "to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

Ordinarily, if the parties present, and the court considers, matters outside of the pleadings, the motion must be treated as a motion for summary judgment. Fed. R. Civ. P. 12(d). But the court may consider materials that are necessarily embraced by the complaint, as well as any exhibits attached to the complaint, without converting the motion into one for summary judgment. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003). In this case, the Court will consider two documents that are attached to the Andersons' amended complaint and whose authenticity is not disputed: the one-page promotional flyer that Cook gave them at the Home and Garden Show and Fibertec's Limited Lifetime Warranty.

### B. Warranty Claims

The Andersons bring various breach-of-warranty claims against various defendants.[3] Notably, the Andersons do *not* argue that Fibertec breached its Limited Lifetime Warranty. Instead, the Andersons argue that they are protected by *additional* warranties, and that defendants have breached those warranties. In arguing that these

---

[3]The Andersons have not been clear about which defendants they believe made (or "adopted") which alleged warranties. Because the Court concludes that none of the statements on which the Andersons rely—including Cook's oral statements and the flyer—provide any relevant warranty, the Court need not decide which defendants made or "adopted" which alleged warranties.

additional warranties exist, the Andersons rely on various statements that Cook made to them at the Home and Garden Show and on the one-page promotional flyer that Cook gave them.  The Andersons argue that Cook's oral statements and the flyer establish a "full" warranty that entitles them to better remedies than Fibertec's Limited Lifetime Warranty.  Specifically, the Andersons contend that: (1) the flyer is a "written warranty" under the Magnuson-Moss Warranty Act ("MMWA"); (2) the flyer and Cook's oral statements are express warranties under state law; and (3) various implied warranties automatically arose under state law.  According to the Andersons, every one of these many warranties were breached by one or more defendants.

The Court disagrees.  For the reasons explained below, the Court finds that neither Cook's statements nor the flyer provide the Andersons with any relevant warranty.  Specifically, the flyer is not a written warranty under the MMWA, and neither Cook's statements nor the flyer provide any relevant express warranty under state law.  Moreover, although the Andersons may have had claims for breach of implied warranties, those claims are now barred by the statute of limitations.  The Andersons are protected only by the Limited Lifetime Warranty that Fibertec has not been accused of breaching and that Fibertec continues to be willing to honor.

1.  Magnuson-Moss Warranty Act:  Breach of a "Written Warranty"

The Andersons first argue that Fibertec and Above & Beyond created and breached a "written warranty" under the MMWA.  Specifically, the Andersons claim that the one-page promotional flyer that Cook handed to them at the Home and Garden Show is a "written warranty" for purposes of the MMWA.

Under the MMWA, a warrantor creates a "written warranty" when it provides a buyer with any of three things with respect to a product:  (1) a written affirmation or promise that the product's "material or workmanship is defect free"; (2) a written affirmation or promise that the product "will meet a specified level of performance over a specified period of time"; or (3) a written undertaking "to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking."  *See* 15 U.S.C. § 2301(6)(A)-(B).[3]

---

[3]The Andersons argued at the hearing that the MMWA's definition of "written warranty" does not serve as a limitation on what constitutes a warranty under the MMWA.  That, however, is exactly what it does.  *See, e.g., Skelton v. Gen. Motors Corp.*, 660 F.2d 311, 322 (7th Cir. 1981) (rejecting the argument that "written warranty" should be construed more broadly than the "single, precise meaning" that Congress provided in its statutory definition); *In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1102 (C.D. Cal. 2012) (stating that "[c]ourts have declined to extend the term 'written warranty' beyond its statutory definition"(citations omitted)); *see also Burgess v. United States*, 553 U.S. 124, 129 (2008) ("'Statutory definitions control the meaning of statutory words . . . in the usual case.'" (quoting *Lawson v. Suwannee Fruit & S.S. Co.*, 336 U.S. 198, 201 (1949))).

The flyer that Cook provided to the Andersons makes two basic statements, neither of which meet the MMWA's definition of "written warranty":

First, the flyer states that Fibertec "is committed to manufacturing the most advanced window systems 'in the world' at an affordable price." ECF No. 22-1. This statement fails to satisfy any of the MMWA's three bases for finding a "written warranty":

As to the first basis: The statement that Fibertec "manufactur[es] the most advanced window systems 'in the world'" does not guarantee a completely defect-free product. After all, "the most advanced window systems 'in the world'" could be like the most advanced autonomous cars in the world—still riddled with defects.

As to the second basis: The statement that Fibertec windows are "the most advanced . . . 'in the world'" does not promise a specified level of performance that the windows will achieve over a specified period of time. Even assuming that saying the windows are "the most advanced 'in the world'" specifies a particular level of performance (a dubious assumption), there is no time period attached to that level of performance. *See, e.g., Martin v. Monsanto Co.,* Case No. ED CV 16-2168-JFW (SPx), 2017 WL 659014, at *5 (C.D. Cal. Feb. 16, 2017) (finding that statements on bottles of "Roundup" promising the bottles "Ma[de] Up to" a certain number of gallons of product were not written warranties under the MMWA because they did not specify a

period of time); *Kelley v. Microsoft Corp.*, No. C07-0475MJP, 2007 WL 2600841, at *2-5 (W.D. Wash. Sept. 10, 2007) (finding statement that a computer was "Windows Vista Capable" was not a written warranty under the MMWA because the statement did not specify a period of time).

And finally, as to the third basis: The statement that Fibertec windows are "the most advanced . . . 'in the world'" does not promise any sort of remedial action. In sum, then, the first statement does not qualify as a "written warranty" for purposes of the MMWA.

The second statement that the flyer makes advertises a "Lifetime Warranty" and promises that "[e]very window" Fibertec produces "is individually inspected before shipping. After all, it must last a lifetime!" ECF No. 22-1. This statement also fails to satisfy any of the MMWA's three bases for finding a "written warranty":

As to the first basis: The statement that the windows are inspected and "must last a lifetime" does not guarantee a defect-free product. Saying that windows are inspected does not promise that those inspections will detect each and every defect. And saying that something will "last a lifetime" likewise does not promise consumers that a product will be completely free of defects. If, say, a sales representative promises that a car will "last a lifetime," that is not a promise that the car is free of any defects as it sits on the showroom floor. The car might have a wire that is loose or a temperature

gauge that is inaccurate or a seam in the upholstery that is not correctly stitched. These problems would be "defects," but they would not be inconsistent with the sales representative's promise that the car will "last a lifetime." Thus, a promise that Fibertec windows will "last" is not the same thing as a promise that Fibertec windows are completely free of defects. After all, every human being lasts a "lifetime," and no human being is free of defects.

As to the second basis: The statement that the windows "must last a lifetime" does not promise a specified level of performance that the windows will maintain over a specified period of time. Even assuming that "last[ing]" is a specified level of performance (a questionable assumption), the statement does not refer to a *specified* period of time. The only period of time advertised is "a lifetime," but there is no indication as to *whose* lifetime. Is it the lifetime of the individual who purchases the windows? Of the purchaser and any individual who is in privity with her? Of the purchaser and any individual who buys or inherits the house in which the windows are installed? Does "lifetime" refer not to the lifetime of a person, but instead to the lifetime of the house? Or the lifetime of the company that warrants the windows? Or some other lifetime?

Promising that something will last a "lifetime" is not the same thing as promising that something will last for "a *specified* period of time." Indeed, the Eighth Circuit has

recognized the "imprecision" inherent in the term "lifetime," explaining that while a "lifetime" warranty does "explicitly extend to the future," "there may be a fact question about how long the relevant 'lifetime'" is. *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 880-81 (8th Cir. 2000). If there is "a fact question" as to "how long" a "lifetime" is, then obviously "lifetime" is not a "specified period of time." If "lifetime" were a specified period of time, the period of time would be *specified*, and there would not be "a fact question."[4]

Finally, as to the third basis: The flyer does not promise "to refund, repair, replace, or take other remedial action" in the event that the windows fail to meet "specifications set forth in the undertaking." The flyer promises that some sort of "Lifetime Warranty" *exists*, but the flyer makes no promise about the *duration* or *content* of that warranty. The flyer does not identify which of the many possible "lifetimes" marks the duration of the warranty, nor does the flyer say anything specific (or even general) about what the warranty actually promises. Does the warranty promise to

---

[4]The Andersons' amended complaint also alleges that they saw "an online and advertising brochure which stated that Fibertec's products carry a warranty for 20 years." ECF No. 22 at ¶ 34. That does not help the Andersons, however, because the 20-year time period does not appear on the one-page promotional flyer on which they rely, and the Andersons have not alleged that the online advertising brochure independently qualifies as a "written warranty." *See Skelton*, 660 F.2d at 312 (holding that the MMWA provides a federal cause of action only for breaches of "written warranties," not for breaches "of 'all written promises presented in connection with the sale of a formally warranted product'" (citation omitted)).

refund the full purchase price in the event that some specification is not met?  Only part

of the purchase price?  Does the warranty promise that the windows will be replaced?

Repaired?  At no cost to the consumer?  At some cost to the consumer?  The flyer's use

of the word "warranty" suggests a promise to take *some* remedial action in *some*

circumstances, but it does not suggest a promise to take a *particular* remedial action in

*particular* circumstances.  *Cf. In re Scotts EZ Seed Litig.*, No. 12 CV 4727(VB), 2013 WL

2303727, at *1, 5-6 (S.D.N.Y. May 22, 2013) (finding that the plaintiffs plausibly pleaded

a written warranty under the MMWA when a product advertised a "No Quibble

Guarantee," promising consumers that if they "are not satisfied after using this product,

[they] are entitled to get [their] money back.  Simply send us the original evidence of

purchase and we will mail you a refund check promptly").

In sum, while the one-page promotional flyer tells the reader that some type of

warranty *exists*, the flyer is not itself a "written warranty" under the MMWA.[5]

---

[5]The Andersons also include in their amended complaint a count entitled
"Rejection of Delivery, Right to Full Replacement."  *See* ECF No. 22 at ¶¶ 153-59.  The
Andersons appear to be relying on 15 U.S.C. § 2304(a)(4), the remedies provision of the
MMWA.  But § 2304(a)(4) merely provides a remedy for certain breaches; it does not
provide an independent cause of action.  Further, because the Andersons were not
given a "full" "written warranty" under the MMWA, they are not entitled to the
remedies provided under § 2304(a)(4).  The Court will thus dismiss this claim.  To the
extent that the Andersons also attempt to rely on state statutes, or allege some sort of
failure of an essential purpose, that claim is not clearly—much less plausibly—pleaded
in their amended complaint.

(continued...)

The Court next addresses whether the flyer or any of Cook's oral statements

qualify as express warranties under state law.

### 2. Breach of an Express Warranty

Under Minnesota law, "[e]xpress warranties by the seller are created as follows:

> (a)  Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

> (b)  Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

> (c)  Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model."

Minn. Stat. § 336.2-313(1)(a)-(c).

---

[5](...continued)
Finally, the Court notes that because this is the only count alleged against defendant E Ship One (which has yet to make an appearance in this case)—and because it is clear on the face of the amended complaint that E Ship One provided the Andersons with no warranty whatsoever—the Court will also dismiss this claim against E Ship One. *See Christiansen v. W. Branch Cmty. Sch. Dist.*, 674 F.3d 927, 938 (8th Cir. 2012) ("[E]ven where a district court exercises its power to sua sponte dismiss a claim (without *any* pending motion to dismiss), the court's failure to give the plaintiff notice and an opportunity to respond before doing so is not reversible error if 'it is patently obvious the plaintiff could not prevail based on the facts alleged in the complaint.'" (citation omitted)).

Importantly, "an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." Minn. Stat. § 336.2-313(2). Instead, courts deem general or vague statements about a product's value to be "puffery" that provides no legal rights to buyers—who, courts say, should know better than to rely on puffery. *See, e.g.*, *In re Scotts EZ Seed Litig.*, 2013 WL 2303727, at *7 (finding various statements were puffery because they were "generalized or vague" and "'should not have been relied upon as an inducement to purchase'" (citations omitted)).[6] With these principles in mind, the Court will first examine the flyer, and then examine Cook's oral statements.

### a. The Flyer

As noted, the one-page promotional flyer makes two basic statements:

---

[6]Minnesota state courts have made clear that, "[b]ecause the UCC is a uniform law," Minnesota's UCC provisions are to be interpreted "in light of the interpretations of other states that have adopted [the UCC]." *Sorchaga v. Ride Auto, LLC*, 893 N.W.2d 360, 374 (Minn. Ct. App. 2017) (citations omitted). Indeed, Minnesota state courts "'give great weight to other states' interpretations of a uniform law.'" *NHF Hog Mktg. v. Pork-Martin, LLP*, 811 N.W.2d 116, 117 (Minn. Ct. App. 2012) (citation omitted). Accordingly, the Court will consider other jurisdictions' decisions interpreting and applying the UCC.

Further, because there is a "common theme that seems to run through cases considering puffery in a variety of contexts"—namely, "that consumer reliance will be induced by specific rather than general assertions"—the Court will also consider decisions that address the issue of "puffery" in various other contexts (such as cases alleging fraud and false advertising). *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990).

First, the flyer asserts that Fibertec "is committed to manufacturing the most advanced window systems 'in the world' at an affordable price." ECF No. 22-1. This statement is obvious puffery. *See, e.g., Gricco v. Carver Boat Corp., LLC*, No. Civ. JFM–04-1854, 2005 WL 3448038, at *3 (D. Md. Dec. 15, 2005) (holding that an advertisement stating that "Carver Yachts constructs the most advanced leisure vessels in the industry" was puffery and not an express warranty); *Atari Corp. v. 3DO Co.*, No. C 94-20298 RMW (EAI), 1994 WL 723601, at *1-3 (N.D. Cal. May 16, 1994) (holding that the slogan "the most advanced home gaming system in the universe" was puffery).

Second, the flyer advertises a "Lifetime Warranty" and states that "[e]very window" that Fibertec produces "is individually inspected before shipping. After all, it must last a lifetime!" ECF No. 22-1.

As to the promise that every window is inspected before shipping: This promise may qualify as an express warranty, *see* Minn. Stat. § 336.2-313(1)(a), but the warranty does the Andersons no good. The Andersons have not alleged that the windows were *not* inspected, nor have they alleged that—had the windows been inspected as promised—the problem with their windows would have been noticed.

As to the promise of a "Lifetime Warranty": This promise may also qualify as an express warranty, *see* Minn. Stat. § 336.2-313(1)(a)-(b), but any such warranty would be limited to the one and only thing that is promised: that the windows come with a

lifetime warranty.  As discussed above, the flyer makes no promise about either the duration or the terms of the "Lifetime Warranty" to which it refers.  Here, the windows *did* come with a lifetime warranty—the Limited Lifetime Warranty—and Fibertec has not been accused of breaching that warranty.  Thus, to the extent that the promise of a "Lifetime Warranty" created an express warranty, the express warranty was not breached.

Finally, as to the statement that windows "must last a lifetime":  In the context of this flyer, that statement was puffery, not an express warranty.  It provides no legal rights to the Andersons.  *See Royal Bus. Machs., Inc. v. Lorraine Corp.*, 633 F.2d 34, 42 (7th Cir. 1980) ("General statements to the effect that goods are 'the best,' or are 'of good quality,' or will 'last a lifetime' and be 'in perfect condition' are generally regarded as expressions of the seller's opinion or the puffing of his wares and do not create an express warranty." (cleaned up)); *see also Gricco*, 2005 WL 3448038, at *2-3 (holding that an advertisement claiming that a yacht was "[c]rafted to last a lifetime" was puffery and not an express warranty); *Performance Motors, Inc. v. Allen*, 186 S.E.2d 161, 166 (N.C. 1972) (finding statement that a "'trailer was supposed to last a lifetime and be in perfect condition'" was puffery and not an express warranty).

*b. Cook's Oral Statements*

Cook told the Andersons that "test results" show that Fibertec windows "have the ability to take in radiant solar heat in the winter while blocking the UV rays which cause[] fading of fabrics, flooring, and rugs inside the Home." ECF No. 22 at ¶ 24. Promising that Fibertec windows "take in radiant solar heat" and "block[]" UV rays could create an express warranty. *See* Minn. Stat. § 336.2-313(1)(a)-(b). But the Andersons do not allege that any such warranty has been breached. Instead, the Andersons allege that defective seals in their windows are causing the windows to leak cold air and appear "cloudy or dirty." ECF No. 22 at ¶¶ 40, 81.[7]

---

[7]The Court notes that an additional problem with this express-warranty claim is that, because Cook's statement did not explicitly extend to future performance, any such claim is likely to be barred by the statute of limitations. *See* Minn. Stat. § 336.2-725(1)-(2).

The Andersons seemed to argue at the hearing (without citation to any authority) that if the Court found that they were provided with *any* express warranty relating to their windows, then they have a "full warranty" that covers any potential problem with those windows. The Andersons' argument is unsupported by law or logic. If a seller expressly warrants only that a window will block UV rays, that seller has not also expressly warranted that the window is shatterproof and that the window will not leak and that the window will not become cloudy. Warranties are contracts, after all; an express warranty extends only as far as its terms.

Cook's remaining statements were clearly puffery.[8]  Those statements fall into

two categories:

First, Cook made general statements about Fibertec being a good company and

Fibertec windows being a good product.  For example, the Andersons allege that Cook

gave them "glowing reports" regarding "the integrity of Fibertec, as a company and as

to the quality of their product," and "assured [them] that Fibertec had been a fantastic

company to work with."  ECF No. 22 at ¶ 21.  Cook also added "that Fibertec had an

excellent reputation when it came to replacement of broken or failed sealed glass units

even replacing a unit or two at no charge if they were accidently [sic] broken during

installation."  *Id.* at ¶ 27.  In short, Cook gave the Andersons "[his] word on the

excellence of the windows and the company Fibertec" and caused the Andersons to

believe that they "were purchasing top quality windows from the best company,

Fibertec."  *Id.* at ¶¶ 35-36.  All of this was classic puffery.  *See, e.g.*, *Royal Bus. Machs.*,

*Inc.*, 633 F.2d at 41-42 (finding statements that a product is of "high quality" and has

"very low" repair frequency were puffery and not express warranties); *Oestreicher v.*

---

[8]The Andersons make a new allegation in their brief: that Cook told them the
windows came with a warranty that "covered everything for 20 years."  ECF No. 50
at 2.  The Andersons did not make this allegation in their amended complaint, and, if
the allegation is true, it is difficult to understand how they could have omitted it, given
that they were meticulous in recounting the numerous statements allegedly made by
the defendants.  Moreover, the Andersons have not moved to amend their (already)
amended complaint as required by Local Rule 15.1.  The Court thus does not address
this new, unpleaded allegation.

*Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) (finding statements about a product's "superb, uncompromising quality" were puffery); *Gricco*, 2005 WL 3448038, at *2-3 (finding various statements in an advertisement were puffery and not express warranties as they merely reflected general opinions of the high quality of a particular brand of yachts).

Second, Cook made some statements about particular features of Fibertec windows. But these statements were also puffery. *In re Scotts EZ Seed Litigation* is instructive. In that case, the court found general statements such as "WaterSmart," "Drought tolerant," "Grows Anywhere! Guaranteed!," "Makes the Most Of Every Drop," and "Grows in Tough Conditions! Guaranteed!" to be too general or vague to create express warranties. *In re Scotts EZ Seed Litig.*, 2013 WL 2303727, at *7. The court contrasted these statements with more specific statements, such as "EZ Seed grows grass '50% thicker with half the water' compared to 'ordinary seed'" and, "EZ Seed is 'developed to thrive in virtually every condition—harsh sun, dense shade, and even spreads to repair wear and tear.'" *Id.* Those statements could—in some instances—be express warranties, the court explained, as they "promise that EZ Seed will perform in specific, measurable ways; namely, that it grows thicker grass with less water than normal grass seed, and is versatile enough to grow in both sunny and shady areas." *Id.*

Here, "Cook insisted on the great benefits of triple pane glass rather than . . .

double pane . . . and instructed [the Andersons] that this was the type of windows they

needed to meet their needs." ECF No. 22 at ¶ 25. He also "insisted" that "the

'e coatings' that Fibertec had on [its] window[s]" would "prolong the life and quality of

the windows and give great energy effeciency [sic]." *Id.* at ¶ 26. Finally, and most

relevantly, Cook told the Andersons that Fibertec's fiberglass frames were of "high

value and quality" and that the windows had an "amazing seal and low air infiltration

qualities." *Id.* at ¶ 22.

But statements that certain features of a window have "great benefits," or

"prolong" the life and quality of the window, or provide "great" energy efficiency, or

are of "high" value and quality, or are "amazing," are puffery. These are general

statements about the quality of the goods—statements that are not measurable,

verifiable, or refutable. Thus, Cook's statements did not provide the Andersons with

any relevant express warranty.[9]

In short, the Andersons were not provided with any (relevant) express warranty,

save for Fibertec's Limited Lifetime Warranty. The Andersons do not allege that

---

[9]The Andersons also argue that the promotional flyer and Cook's statements,
*taken together*, constitute an express warranty. They don't. The relevant statements that
Cook made, and the relevant parts of the promotional flyer, are all general, vague
statements that amount to puffery. Combining two small piles of puffery into one large
pile of puffery does not somehow turn puffery into an express warranty.

Fibertec has breached its Limited Lifetime Warranty. The Court therefore dismisses all of the Andersons' express-warranty claims.

### 3. Breach of Implied Warranties

The Andersons also claim that defendants breached two implied warranties. *See* ECF No. 22 at ¶¶ 135-52. Implied warranties are "imposed by [state] law for the protection of the buyer and do[] not depend upon the affirmative intention of the parties." *Dougall v. Brown Bay Boat Works & Sales, Inc.*, 178 N.W.2d 217, 222 (Minn. 1970). In some instances, sellers can disclaim implied warranties or limit the remedies available for their breach. *See* Minn. Stat. § 336.2-316(2)-(4); Minn. Stat. § 336.2-719; 15 U.S.C. § 2308; 15 U.S.C. § 2304(a)(2)-(3). Fibertec argues that its Limited Lifetime Warranty limits the remedies available to the Andersons for any breach of any implied warranty.

The Andersons disagree. They contend that the limitations that the Limited Lifetime Warranty imposes on the remedies available for breach of implied warranties cannot be enforced against them because they were not given notice of those limitations at the time of purchase.[10] The Andersons may be correct; consumers are generally

---

[10]At the hearing, the Andersons also argued that, although they have a right to the express remedies provided under the Limited Lifetime Warranty, they are not bound by the express limitations on those express remedies. The Andersons are incorrect. The remedies and the limitations on those remedies are part of the same contract. The fact that the Andersons were not given a copy of that contract at the time

(continued...)

protected by implied warranties unless those warranties are properly disclaimed or limited, and since the Andersons were not given a copy of the Limited Lifetime Warranty at the time of purchase, the remedies may not have been properly limited. It does not matter, however, because any implied-warranty claim that the Andersons had is now barred by the statute of limitations. *See* Minn. Stat. § 336.2-725.

In Minnesota, implied-warranty claims carry a four-year statute of limitations. *See* Minn. Stat. § 336.2-725. The four-year period begins to run "when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." *See* Minn. Stat. § 336.2-725(2). A "breach" almost always "occurs when tender of delivery is made," with the only exception being if the "warranty explicitly extends to future performance." *Id.* When "a warranty explicitly extends to future performance," the statute of limitations begins to run when the breach is discovered. *Id.* But "an implied warranty by its very nature cannot explicitly extend to future performance." *Nelson v. Int'l Harvester Corp.*, 394 N.W.2d 578, 582 (Minn. Ct. App. 1986) (citations omitted); *see also Marvin Lumber & Cedar Co.*, 223 F.3d at 879 (same). Thus, the statute of limitations on the Andersons' implied-warranty claims began to run on the date of delivery.

---

[10](...continued)

of purchase may mean that the *entire contract* is without legal effect, but it does not mean that the Andersons can rewrite the contract—leaving in the parts they like (such as the remedies), but taking out the parts they do not like (such as the limitations on those remedies).

The Fibertec windows were delivered to the Andersons in April 2011. ECF

No. 22 at ¶ 39. The Andersons filed this lawsuit more than seven years later—in

June 2018. *See* ECF No. 1. Hence, the Andersons' implied-warranty claims are clearly

barred by the four-year statute of limitations.[11]

---

[11]The Andersons argue that Above & Beyond and Cook "did not plead the statute of limitations as an affirmative defense in this case." ECF No. 50 at 22. The Andersons are wrong. *See* ECF No. 10 at ¶ 189 (pleading the statute-of-limitations defense in response to the Andersons' complaint); ECF No. 29 at ¶ 189 (pleading the statute-of-limitations defense in response to the Andersons' amended complaint).

It is true that *Fibertec* did not plead the statute of limitations as a defense. But Fibertec asserted the defense at the hearing. Because the Andersons had notice of the defense based on the pleadings of Above & Beyond and Cook—and because the implied-warranty claims that the Andersons assert against Fibertec are identical to the implied-warranty claims that the Andersons assert against Above & Beyond and Cook—the Court dismisses all implied-warranty claims against all defendants. *See, e.g.,* *Brown v. Univ. of Ky. Comprehensive Assessment & Training Servs.*, Civ. A. No. 12-CV-123-KSF, 2013 WL 990423, at *8 (E.D. Ky. Mar. 13, 2013) ("[D]istrict courts have applied the statute of limitations to a plaintiff's claims where one defendant, or set of defendants, had affirmatively raised the defense but other defendants failed to do so." (citations omitted)).

For the Court to rule otherwise would waste the resources of the parties and the Court. Fibertec would move for permission to amend its answer to add a statute-of-limitations defense, and its motion would be granted (because this case is in its infancy and the defense is obviously not futile). Fibertec would then move for judgment on the pleadings, and its motion would be granted. There is no reason to require the parties to jump through all of those hoops, especially because there is no reason to believe that discovery or further motions practice might change the Court's conclusion that the Andersons' implied-warranty claims are barred by the statute of limitations.

*C. Fraud Claims*

The Andersons also bring various fraud claims against various defendants. Specifically, the Andersons contend that various representations (or omissions) by various defendants amounted to (1) violations of the Minnesota Consumer Fraud Act; (2) violations of the Minnesota Deceptive Trade Practices Act; and (3) common-law fraud.

1.  Minnesota Consumer Fraud Act

The Minnesota Consumer Fraud Act ("MCFA") prohibits the use "of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise . . . ."  Minn. Stat. § 325F.69, subd. 1.  Although the Minnesota Attorney General has primary responsibility for enforcing the MCFA, *see* Minn. Stat. § 8.31, subd. 1, private citizens may—in some instances—file lawsuits to recover damages for violations of the MCFA under the "private attorney general statute," Minn. Stat. § 8.31, subd. 3a.  But to recover under the private attorney general statute, plaintiffs must demonstrate that their action "benefits the public."  *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000).

At the hearing, the Andersons argued that defendants violated the MCFA by distributing the one-page promotional flyer at the Minneapolis Home and Garden

Show[12]—a flyer that they claim materially misrepresented the quality, duration, or terms of the warranty. The Andersons contend that their claim "benefits the public" because the one-page flyer must have been handed out to others attending the home show. Putting aside the fact that none of this was pleaded in the Andersons' amended complaint—which "is devoid of any allegations that the complaint was brought for the 'public benefit' or how their action benefits the public," *Baker v. Best Buy Stores, LP*, 812 N.W.2d 177, 183 (Minn. Ct. App. 2012)—the Andersons' argument is meritless, as there is nothing on the face of the one-page flyer that is fraudulent, deceptive, or misleading.

The flyer simply states that Fibertec windows come with a "Lifetime Warranty" and invites prospective customers to contact Fibertec "[f]or more information" about that warranty. The flyer also informs prospective customers of various ways that they can contact Fibertec, including through an email address, a website, a toll-free phone number, and a physical mailing address. ECF No. 22-1.

The Andersons contend that the words "Lifetime Warranty" misrepresent the quality, duration, or terms of the warranty. But as this Court has already explained, the phrase "Lifetime Warranty"—standing alone—communicates almost nothing about the quality, duration, or terms of the warranty. Countless products carry "lifetime"

---

[12]The Andersons' amended complaint and brief appear to make additional arguments about how defendants may have violated the MCFA. At the hearing, though, the Andersons made clear that their MCFA claim is based entirely on the flyer that they were given at the Home and Garden Show.

warranties, and yet it seems that no two "lifetime" warranties are the same. Instead,

"lifetime" warranties promise different (and sometimes very limited) remedies

triggered by different (and sometimes very limited) circumstances. Moreover,

"lifetime" warranties last different (and sometimes very limited) periods of time.

Here, the flyer represented only that Fibertec offered a "lifetime warranty" of

some kind. That representation was true, because Fibertec *did* offer a lifetime warranty

of some kind (specifically, the Limited Lifetime Warranty). Because the information

that the flyer provided was true, and because the flyer did not make any representation

about the quality, duration, or terms of the warranty, the flyer did not contain a

fraudulent misrepresentation.

It bears mention that, if the Andersons wanted to know anything about the

quality, duration, or terms of the "lifetime warranty" that would cover their windows,

all they had to do was ask. As noted, they had been invited to contact Fibertec for more

information about the warranty, and they had been given multiple ways to do so.

Instead of contacting Fibertec or asking for a copy of the warranty from Cook, the

Andersons instead invested almost $100,000 in windows without knowing anything

about the warranty that covered those windows, save for two words ("Lifetime

Warranty") that appeared on a one-page flyer that had been handed to them at a home

show. Understandably, the Andersons now have buyer's remorse, but the MCFA

protects consumers from fraud, not them from their own lack of diligence.  No one

defrauded the Andersons.

### 2.  Minnesota Deceptive Trade Practices Act

The Andersons also allege that defendants violated the Minnesota Deceptive

Trade Practices Act ("MDTPA") by misrepresenting the quality of Fibertec's windows.

*See* ECF No. 22 at ¶¶ 172-73; *see also* Minn. Stat. § 325D.44, subd. 1(5), 1(7).  Unlike the

MCFA (which requires consumers to resort to the private-attorney-general statute to

bring a claim), the MDTPA itself creates a cause of action for consumers "likely to be

damaged by a deceptive trade practice of another."  Minn. Stat. § 325D.45, subd. 1.  The

MDTPA therefore does not require that a lawsuit benefit the public.  *See Randall v.*

*R.S.C. Equip. Rental*, No. 11-CV-2944 (PJS/LIB), 2012 WL 2060634, at *2 (D. Minn. June 7,

2012).  But the MDTPA "provides only injunctive relief," not monetary damages.

*Simmons v. Modern Aero, Inc.*, 603 N.W.2d 336, 339 (Minn. Ct. App. 1999).

There are (at least) two problems with the Andersons' MDTPA claim:

First, the Andersons do not seek injunctive relief; they seek only monetary

damages.  ECF No. 22 at ¶ 174.  As noted, monetary damages are not available under

the MDTPA.  *Simmons*, 603 N.W.2d at 339.[13]

---

[13]The Andersons argue that *State by Humphrey v. Alpine Air Products, Inc.*, 490
N.W.2d 888 (Minn. Ct. App. 1992), holds that the MDTPA authorizes courts to award
monetary damages as "restitution."  *Alpine Air Products* says no such thing; in fact, it

(continued...)

Second, the Andersons have not plausibly pleaded that they or anyone else is likely to suffer harm in the future—the type of harm that an injunction would prevent. Relief is available under the MDTPA only to prevent future harm, not to compensate for past harm, and the Andersons seek only to be compensated for past harm. *See* Minn. Stat. § 325D.45, subd. 1 (creating a cause of action for consumers "*likely to be damaged* by a deceptive trade practice of another" (emphasis added)); *see also InCompass IT, Inc. v. Dell, Inc.*, No. 11-CV-0629 (PJS/JJG), 2012 WL 383960, at *4 (D. Minn Feb. 6, 2012) (explaining how the MDPTA requires plaintiffs to allege that they will suffer "harm *in the future*" (citations omitted)).

For these reasons, the Andersons' MDTPA claims are dismissed.

### 3. Common-Law Fraud

Finally, the Andersons allege that defendants committed common-law fraud. *See* ECF No. 22 at ¶¶ 175-82. "To establish common law fraud, the [Andersons] must prove: (1) a false representation of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made

_____

(...continued)
says the opposite. In *Alpine Air Products*, the Minnesota Court of Appeals explained that "there is no express authority for the attorney general's action for restitution." *Alpine Air Prods., Inc.*, 490 N.W.2d at 896 n.4. In other words, the court said that the MDTPA did *not* authorize the recovery of restitution. *Because* the MDTPA did not authorize the recovery of restitution, the court said that it was relying on "the doctrine of *parens patriae*" to uphold the trial court's award of restitution. *Id.*

without knowing whether it was true or false; (3) with the intention to induce action in reliance thereon; (4) that the representation caused action in reliance thereon; and (5) pecuniary damages as a result of the reliance." *U.S. Bank N.A. v. Cold Spring Granite Co.*, 802 N.W.2d 363, 373 (Minn. 2011) (citation omitted). "Fraud may also be established by concealment of the truth." *Id.* (citation omitted).

To properly plead fraud, the Andersons must satisfy the requirements of Fed. R. Civ. P. 9(b). Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." If "'the facts constituting the fraud are peculiarly within [defendants'] knowledge,'" plaintiffs may satisfy Rule 9(b) by pleading on the basis of information and belief. *United States ex rel. Strubbe v. Crawford Cty. Mem'l Hosp.*, 915 F.3d 1158, 1163 (8th Cir. 2019) (citation omitted). But the allegations pleaded on information and belief must be "'accompanied by a statement of facts on which the belief is founded.'" *Id.* (citation omitted).

The Andersons appear to allege that defendants committed fraud in two ways:

First, the Andersons allege that defendants committed fraud by knowingly withholding information about the defective nature of the windows. ECF No. 22 at ¶¶ 64-65, 67, 177; ECF No. 50 at 18-20. But the only thing that the Andersons rely on to support this claim is the fact that—over five-and-a-half years after the Andersons purchased their windows, when they started to complain about the defects—defendants

informed them that other customers were having the same problem.  *See* ECF No. 22

at ¶¶ 48, 54-55.  The Andersons plead no facts suggesting that defendants knew of the

defective nature of the windows either (1) at the time that the Andersons purchased the

windows or (2) within two years after the windows were delivered (after which the

terms of the warranty became less favorable to the Andersons).

Indeed, the Andersons *themselves* did not notice any problems with their

windows until more than three-and-a-half years after the windows were installed, and

those problems initially did not lead them to believe that the windows were defective.

Only after multiple rounds of professional cleaning did the Andersons realize that the

windows were defective—and this realization did not occur until more than five years

after the windows were installed.  In short, the Andersons have not pleaded facts that

would plausibly suggest that defendants had knowledge of the windows' defects at the

time that they sold the windows to the Andersons or within two years thereafter.

Second, the Andersons allege that the flyer that Cook provided to them at the

Home and Garden Show fraudulently advertised a "Lifetime Warranty."  *See* ECF

No. 22 at ¶¶ 179-80; ECF No. 50 at 17-18.  At the hearing, the Andersons elaborated that

the flyer was fraudulent because it did not disclose the precise terms of the "Lifetime

Warranty" that it advertised.  But, as the Court has explained several times, there is

nothing fraudulent about the flyer.  The flyer does nothing more than assert that

Fibertec windows come with a "Lifetime Warranty" of some sort, and Fibertec windows *do* come with a "Lifetime Warranty" of some sort.

The Andersons seemed to contend, however, that when the flyer is combined with Cook's oral statements, the flyer becomes fraudulent. But Cook did not make any oral statements *regarding the warranty* (or at least no such statements are alleged in the amended complaint); instead, Cook is alleged to have praised Fibertec and its windows. *See* ECF No. 22 at ¶¶ 21-27.[14] Accordingly, the Court dismisses the Andersons' claims for common-law fraud.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1.     Defendants' motions for judgment on the pleadings [ECF Nos. 39 and 44] are GRANTED IN PART as follows:

---

[14]Once again, the Andersons try to defeat defendants' motions by making factual allegations in their brief that appear nowhere in their amended complaint. Specifically, the Andersons make new allegations about statements that Cook is alleged to have made about the warranty. *See* ECF No. 50 at 2-3. Once again, if these allegations are true, it is very difficult to understand how they could have been omitted from the amended complaint. In any event, the Andersons have not moved to amend their amended complaint as required by Local Rule 15.1, and in ruling on defendants' motions for judgment on the pleadings, the Court will not address factual assertions that do not appear in any pleading.

a.  Counts I, III, IV (breach of implied warranty of fitness for particular

purpose), V, and VI are DISMISSED WITH PREJUDICE.

b.  Counts II, IV (rejection of delivery right to full replacement), and

VII are DISMISSED WITHOUT PREJUDICE.

2.  Because all claims of plaintiffs have been dismissed, all cross-claims are

DISMISSED WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: November 4, 2019

 s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge